UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| In Re:<br>Revolutionary Hotels, Inc.<br><br><br><br>Debtor(s) | BK No.: 13-32815<br><br>Chapter: 11<br>Honorable Donald R. Cassling |

**SEVENTH INTERIM ORDER: (A) AUTHORIZING DEBTOR TO UTILIZE CASH COLLATERAL; (B) GRANTING CERTAIN LIENS AND PROVIDE ADEQUATE PROTECTION AND OTHER RELIEF TO SECURED CREDITORS; AND (C) SCHEDULING A FINAL HEARING ON DEBTOR'S MOTION TO USE CASH COLLATERAL**

This cause coming before the Court on the Motion of Debtor Revolutionary Hotels, Inc. ("Debtor") to Authorize Use of Cash Collateral pursuant to 11 U.S.C. § 363(c)(2) and Fed.R.Bankr.P. 4001 (the "Motion"), all parties having been given notice thereof, and the court being fully apprised, THE COURT HEREBY FINDS AND CONCLUDES THAT:

A. On August 16, 2013 (the "Filing Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Debtor has retained possession of its property and continues to operate its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

B. The Court has jurisdiction over the Case pursuant to 28 U.S.C. §§ 1334 and 157, this is a core proceeding as defined by 28 U.S.C. § 157(b)(2) and venue is appropriate under 28 U.S.C. § 1409(a).

C. The Debtor's primary source of revenue is income from the rents and operation of a hotel ("Hotel Income") on the property commonly known as the Super 8 Motel located at 17220 S. Halsted Street, East Hazel Crest, IL 60429 (the "Property").

D. Pursuant to certain loan documents by and between Debtor and American Enterprise Bank, including but not limited to a Note, Mortgage and Assignment of Rents (the "AEB Loan Documents"), American Enterprise Bank holds a first position security interest in the Hotel Income.

E. The Debtor estimates that as of the Filing Date, the Debtor is liable to American Enterprise Bank in the amount of $1,703,526.58; First Illinois Motel Corp. in the amount of $240,000.00; United Central Bank in the amount of $3,334,491.90; and the Cook County Treasurer in the amount of $253,387.88.

F. In order to prevent immediate and irreparable harm to the estate through the Termination Date (defined below) of this Order, pending the Final Hearing on Debtor's Motion (defined below), the Debtor has requested that the Court and all noticed parties permit the Debtor's use of the Hotel Income and other revenue of the Debtor (the "Cash Collateral") on an interim basis to pay the amounts set forth in the Budget attached as Exhibit A to Debtor's Motion (the "Budget", a true and correct copy of which is attached to this Order as Exhibit A) and on terms as provided herein.

G. The notice provided by the Debtor of its Motion satisfies the requirements of Fed.R.Bankr.P. 2002, 4001(b) and 9014 and 11 U.S.C. §§ 102(a) and 363.

H. With the agreement of American Enterprises Bank, First Illinois Mortgage Corp., United Central Bank and the consent of the U.S. Trustee, this Court entered an Agreed Interim Order: (A) Authorizing Debtor to Use Cash Collateral; (B) Grant Certain Liens and Provide Adequate Protection and Other Relief to Secured Creditors; and (C) Schedule a Final Hearing on Debtor's Motion to Use Cash Collateral on September 20, 2013, a Second Agreed Interim Order: (A) Authorizing Debtor to Use Cash Collateral; (B) Grant Certain Liens and Provide Adequate Protection and Other Relief to Secured Creditors; and (C) Schedule a Final Hearing on Debtor's Motion to Use Cash Collateral on October 17, 2013, a Third Agreed Interim Order: (A) Authorizing Debtor to Use Cash Collateral; (B) Grant Certain Liens and Provide Adequate Protection and Other Relief to Secured Creditors; and (C) Schedule a Final

Hearing on Debtor's Motion to Use Cash Collateral on November 12, 2013, a Fourth Agreed Interim Order: (A) Authorizing Debtor to Use Cash Collateral; (B) Grant Certain Liens and Provide Adequate Protection and Other Relief to Secured Creditors; and (C) Schedule a Final Hearing on Debtor's Motion to Use Cash Collateral on December 20, 2013, a fifth Agreed Interim Order: (A) Authorizing Debtor to Use Cash Collateral; (B) Grant Certain Liens and Provide Adequate Protection and Other Relief to Secured Creditors; and (C) Schedule a Final Hearing on Debtor's Motion to Use Cash Collateral on January 17, 2014 and a sixth Agreed Interim Order: (A) Authorizing Debtor to Use Cash Collateral; (B) Grant Certain Liens and Provide Adequate Protection and Other Relief to Secured Creditors; and (C) Schedule a Final Hearing on Debtor's Motion to Use Cash Collateral on February 5, 2014.

NOW THEREFORE, BASED UPON THE FOREGOING FINDINGS IT IS HEREBY ORDERED THAT:

1. The Debtor is authorized to use Cash Collateral in accordance with and pursuant to the terms and provisions of this Order and to the extent necessary to pay those expenses enumerated in the Budget as and when such expenses become due and payable. The Debtor may use Cash Collateral in excess of the amounts set forth in the Budget, not to exceed an excess of 10% per line item, without the filing of an amended Budget with this Court, provided that Debtor may not use Cash Collateral in excess of the amounts set forth in the Budget without first paying the amounts due to American Enterprise Bank and Tax Obligations as defined in Paragraphs 7 and 8 of this Order. Except as otherwise provided in this Order, Debtor shall use the Cash Collateral solely for payment of its post-petition obligations and indebtedness with respect to the insurance, maintenance, real estate taxes, ordinary operations and repairs related to the Property.

2. Debtor shall deposit all monies collected in connection with the Cash Collateral in its Debtor in Possession accounts. Notwithstanding anything to the contrary herein or in the Budget, the Debtor shall not use Cash Collateral to make any payments to the Debtor, to or on behalf of any Insider of the Debtor (as defined in 11 U.S.C. § 101(31)), to or on behalf of any entity or person related to any Insider of the Debtor, or to or on behalf of Revolutionary, LLC.

3. American Enterprise Bank is hereby granted as adequate protection: (i) replacement liens in existing Hotel Revenue, future post-petition Hotel Revenue, and all other items of Cash Collateral of the Debtor; and (b) a priority claim pursuant to 507(b) of the Bankruptcy Code for the diminution in value, if any, of American Enterprise Bank's interest in its collateral (the "Replacement Liens"). The Replacement Liens are and shall be in addition to American Enterprise Bank's prepetition liens all such liens are and shall remain first priority liens without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments, and shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case. Nothwithstanding the foregoing, Debtor is authorized and directed to execute and deliver to American Enterprise Bank such statements, mortgages, notes, instruments and other documents that American Enterprise Bank may deem necessary from time to time.

4. Subject to the rights and Replacement Liens of American Enterprise Bank, First Illinois Motel Corp. and United Central Bank are hereby granted replacement liens in the existing and future Hotel Revenue and Cash Collateral to the same extent, validity and priority of any prepetition liens in such items as adequate protection for any decrease in value of their interests in the Debtor's use of the Hotel Income and Cash Collateral.

5. In addition to the Replacement Liens, as adequate protection payments, the Debtor shall continue to make and maintain current monthly payments to American Enterprise Bank in the amount of $12,152.39 due upon the thirtieth (30th) day of each subsequent calendar month and continuing every month until the Terminate Date, or upon further order of the Court.

6. As further adequate protection to American Enterprise Bank and all other parties, the Debtor shall pay to American Enterprise Bank a monthly payment in the amount of $10,614.92 to be held for the pre-petition real estate tax obligation and a monthly payment in the amount of $14,575.00 to be held for

the post-petition real estate tax obligation (collectively, the "Tax Obligations") on the first day of each subsequent calendar month and continuing every month until the earlier of the Termination Date or full satisfaction of the claim of the real estate tax indebtedness or upon further order of the Court. The Debtor shall immediately pay all amounts escrowed for the Tax Obligations by prior orders of this Court to American Enterprise Bank. Additionally, as soon as reasonably possible, and in no event later than the Termination Date of this Order, the Debtor shall provide a full and detailed listing of all outstanding real estate tax obligations including, but not limited to, the amounts due, the installment periods due, and any scheduled redemption dates.

7. Upon the Termination Date, and without further notice or order of the Court, Debtor's authorization to use Cash Collateral hereunder will automatically terminate. Any further such use of Cash Collateral after the occurrence of the Termination Date shall be subject to further order of this Court.

8. The Debtor shall maintain all necessary insurances, including, without limitation, life, fire, hazard, comprehensive, public liability and workmen's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the business in which the Debtor is engaged. To the extent not previously provided since the Filing Date, Debtor shall provide American Enterprise Bank and the United States Trustee with written evidence of all such coverage (including, without limitation, evidence that the Aggregate Collateral is insured for the full replacement value thereof), as well as prompt notification of any change in such coverage that may hereafter occur.

9. To the extent there exists a conflict among the Motion, the Loan Documents, and prior orders of this Court authorizing Debtor's use of Cash Collateral and the terms of this Order, this Order shall govern and control.

10. American Enterprise Bank shall have the right (and the Debtor shall cooperate with such right) to inspect the Property and any collateral and to conduct appraisals o the Property and conduct audits and inspections of the books and records of the Debtor during regular business hours upon reasonable advance notice. The Debtor shall provide to American Enterprise Bank and First Illinois Motel Corp. the following documents on or before the Termination Date of this order;

(A) full and complete quarterly financial statements for calendar year 2013,
(B) hotel star reports for December 2013 and January 2014 and all hotel star reports going forward during the pendency of this case,
(C) a full and complete of the debtor's 2012 annual federal income tax return,
(D) a full and complete copy of the debtor's bank statements from February 2014 forward, both pre-petition and Debtor in Possession accounts,
(E) a full and complete copy of the debtor's operating reports for January 2014 and all operating reports going forward during the pendency of this case,
(F) all documentation reflecting real estate tax escrow payments and deposits made post-petition,
(G) all documentation supporting the need for and payment of expenses listed in the line items of Debtor's budget, including but not limited to maintenance and repairs expenses, and
(H) for the guarantors of the American Enterprises Bank loan (the "Guarantors") a full and complete copy of the Guarantor's annual federal income tax returns, including any extension requests and filings, and an annual personal statement of financial condition (to be provided to American Enterprises Bank only)
(I) weekly printouts showing all activity, without limitation or restriction, in all of the Debtor's bank accounts

The Debtor shall make itself available to American Enterprise Bank for periodic meetings upon reasonable advance notice to discuss relevant issues in this case. The Debtor shall, immediately upon receipt by the Debtor or its attorney, provide American Enterprise Bank a copy of all financing proposals and commitment letters for any proposed refinancing of the property.

11. Additionally, the Debtor shall:
(A) Return the total of $6,200.00 withdrawn from the Debtor In Possession bank account by the

Principals and any further cash withdrawals immediately upon entry of this order (which shall not prejudice American Enterprise Bank from seeking repayment of any other amounts),

  (B) Cease any further cash withdrawals from any account of the Debtor in Possession,

  (C) Ensure that only the business manager, Mark Tyler, is a signatory on the Debtor In Possession bank accounts,

  (E) Limit the monthly salary of Pyar Ali to $5,000.00 per month (to include any advances, fees or reimbursements of any kind for any reason),

  (F) Cease paying the salary of Sunny Ali immediately, with any payments made in December 2013 to be returned to the Debtor In Possession account immediately, and

  (G) Turnover all funds in the Debtor's pre-petition bank account(s) with Charter One Bank to American Enterprise Bank immediately upon entry of this order.

12. Debtor stipulates that failure to abide by any of the requirements included within this order shall result in forfeiture of all future right to use cash collateral and that Debtor will consent to American Enterprise Bank's relief from the Automatic Stay.

13. By consenting to the entry of this Order or by taking any actions pursuant to this Order, American Enterprise Bank shall not be deemed to be in control of the operations or liquidation of the Debtor or be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of the Debtor.

14. If this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect the priority, validity, enforeceability or effectiveness of ay lien, security interest or other benefit or claim authorized herby with respect to any Hotel Income or Cash Collateral used prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

15. This Order shall take effect and be fully enforceable as of the date of this Order.

   NOTICE OF FINAL HEARING

16. The Termination Date of this Order is March 21, 2014 unless further continued by the Court.

17. An Interim Hearing on Debtor's Motion to Use Cash Collateral is set for March 17, 2014 at 10:00 am.

18. Debtor shall serve notice of this Order pursuant to Local Rule 4001-2 to:

a. The Office of the U.S. Trustee, Attention Kimberly Bacher
b. United Central Bank through its attorneys, Coman & Anderson
c. American Enterprises Bank through its attorneys, Clark Hill PC
d. First Illinois Motel Corp. through its attorney, Mark E. Burt
e. Ronald Peterson, Chapter 7 Trustee for Revolutionary, LLC.

                                            Enter: *Donald R. Cassling*

Dated:  **24 FEB 2014**                     United States Bankruptcy Judge

**Prepared by:**
Ledford & Wu

Rev: 20130104_bko

George M. Vogl
200 S. Michigan Ave., Suite 209
Chicago, IL 60604
312-294-4400
gmv@ledfordwu.com

Revolutionary Hotels, Inc.
Operating Budget: 2013
13-32185

| Revenues | Monthly | Annual |
|---|---|---|
| Room Sales - Transient | $ 40,000.00 | $ 480,000.00 |
| Extended Stay | 80,000.00 | 960,000.00 |
| Other Income | 850.00 | 10,200.00 |
| | $ 120,850.00 | $ 1,450,200.00 |
| **Long-Term Expenses** | | |
| Mortgage-American Enterprises | $ 12,152.39 | $ 145,828.68 |
| Capital Repair Escrow | 10,000.00 | $ 120,000.00 |
| Real Estate Tax Escrow - Current | 14,575.00 | 174,900.00 |
| Real Estate Tax Escrow-Prior | 10,614.92 | 127,379.04 |
| | $ 47,342.31 | $ 568,107.72 |
| **Operating Expenses** | | |
| Advertising | $ 125.00 | $ 1,500.00 |
| Cost of Goods Sold | 1,250.00 | 15,000.00 |
| Payroll Expenses | 9,746.83 | 116,962.00 |
| Utilities | 3,800.00 | 45,600.00 |
| Booking Fees/Commissions | 750.00 | 9,000.00 |
| Royalty Fees | 10,416.67 | 125,000.00 |
| Insurances | 3,333.33 | 40,000.00 |
| Repairs & Maintenance | 17,083.33 | 205,000.00 |
| Supplies | 14,583.33 | 175,000.00 |
| Bank & Credit Card Charges | 1,500.00 | 18,000.00 |
| Vehicle Expenses | 2,500.00 | 30,000.00 |
| Governmental Fees/Costs | 1,791.67 | 21,500.00 |
| Professional Fees | 4,166.67 | 50,000.00 |
| Miscellaneaous | 641.67 | 7,700.00 |
| | $ 71,688.50 | $ 860,262.00 |
| Total Expenses | $ 119,030.81 | $ 1,428,369.72 |
| Net Operating Income | $ 1,819.19 | $ 21,830.28 |